We can start right away with the first case for the day, Leon-Solis v. Sessions. Counsel. Good morning, your honors. May it please the court. My name is Ted Hartman. I represent the appellant petitioner, Mr. Elvar de Leon-Solis. Mr. Solis, this matter comes as an appeal from the Board of Immigration Appeals' decision denying cancellation of removal to Mr. Solis, which he, was a claim for relief that he pushed at the individual hearing of the immigration court level and then lost there and then also lost at the Board of Immigration Appeals level. In order to qualify for cancellation of removal, let me back up. Mr. de Leon-Solis was put into immigration removal proceedings. He did not have status in the United States, but in order to qualify for cancellation of removal, a person can be continuously in the United States for 10 years, be a good person of good moral character, a person not convicted of specific criminal offenses, and establish that they have, that exceptional, extreme, unusual hardship would impact an alien spouse, parent, or child who is a citizen of the United States, or an alien admitted, legal permanent resident, alien lawfully admitted to the United States. I think you can assume we know this as well as the fact that the BIA affirmed the denial based on the failure to show exceptional and unusual circumstances. You know our review is limited to questions of law or constitutional issues. Why don't you tell us what you're raising here? Okay. The issue is, our position is that the child would suffer exceptional, extreme, unusual hardship in this particular case. In this particular case, you had a child whose mother was a diabetic. And if the father had been deported from the United States, that child would suffer exceptional, extreme, unusual hardship. Now, to anticipate what the government will say, the government will say that economic loss in and of itself cannot be the sole rationale, or the sole argument for exceptional, extreme, unusual hardship. Is the diabetes controlled by medicine? The diabetes was controlled by medicine. However, it still rendered the mother unable to work. In fact, if you look at the decision of the immigration court, not the BIA, but the immigration court, they concede that although no evidence of medication was presented, they would concede that her testimony was credible and that she was in fact a diabetic who could not work because of what she was suffering from. Let me ask you this. As I said, our standard of review is limited. And it seems to me that you could be quarreling only over the correctness of the factual findings on whether there was extreme hardship. Is there an error of law you're identifying here? Yes. In particular, in the Racina's case, which is cited throughout our brief, that was a case in which the BIA found that extreme and unusual hardship did impact a child. There were two or four U.S. citizen children. You had a mother who was Mexican who, if she had been deported from the United States, those four children would not have a sole caregiver. In other circumstances, in the Monreal case... That's not this case. Right. Okay. Right. In the Monreal case, you had a situation where the other parent had already been deported from the United States. So if the respondent there had been deported from the United States, they would then join the other person, the other parent in their native country. And then the other case, the Anzola case, there was a situation where the father was also able to provide economically and he was still living in the United States and they were together. So what we're saying is in this case, what distinguishes this case from the other case law in terms of exceptional and extreme hardship is that you have a father who is the sole caregiver and you have a mother who is not able to provide in any kind of way. So if this particular person was... Economically. You're not denying that she was able to care for the child in a maternal way, right? No. No, we're not denying that. Okay. So let me be clear. Are you arguing that as a matter of law, these facts have to be found to be an extreme hardship? Yes. Okay. Please. And our position is because economic... The language is economic detriment alone is insufficient. But in this... And that's... And we interpret that as meaning, sure, if you're going to take a pay cut by being deported to Mexico or you're going to suffer economically, that's not enough. But the difference between that and what we're talking about here is survivability. There's absolutely no way for this child to survive if her father is deported from the United States. And it's not just economic hardship. It's they will be homeless. They will be on the street if this respondent is deported from the United States and the mother can't work. And there's absolutely no way for this U.S. citizen child to survive economically. And that's what we... That's what distinguishes this from cases where the court has found extreme and unusual hardship does not exist. We think this is on all fours with the one case where the court said they looked at four U.S. citizen children, a father who was out of the picture. If the mother had been removed to Mexico, that child, those four children, four U.S. citizen children, would not be able to survive. So we're not saying this is economic detriment. We're saying this is a matter of being able to survive, being able to make sure that the U.S. citizen child is not homeless and does not want for food and all the other things that are necessary to survive. So in summary, our position is this is more like the Racines case, and this is distinguished from the Montreal and Andazola case because in those cases there was a parent somewhere that could help. There was support. And our position here is there's no support. This child is completely in trouble if the father, the respondent, gets deported to Guatemala. May I ask you, since the father was ordered deported, how has he been able to work in the country? Well, once you file an asylum application, you are entitled to get an employment authorization. No, no, I understand that. But did that continue after he was ordered deported? I believe that— Does he still have that today? Yes, I believe because of this pending appeal. Oh, okay. Because of the pending appeal. Let us hear from the government. Good morning. May it please the Court. Aaron Nelson for the Attorney General. Your Honors, nothing in the opening remarks by opposing counsel changes our position in our brief that this is a clear case where the Court lacks jurisdiction under 8 U.S.C. 1252a2b1 because what we're dealing with is a discretionary denial of cancellation of removal application. And as Your Honor referenced, the only way that this Court retains jurisdiction is if there is a legal error, both in counsel's comments and in the brief before the Court. In the brief, there was a mention that there was a factual and legal error in the stated issues as if a promise that there was going to be argument in relation to that legal error, but that brief never fulfills that promise. There's no mention of the case law on point. There's no mention of the statute barring jurisdiction. And so what we have is essentially a quarrel over the weighing of the evidence and the weighing of the equities. And that's respectfully what counsel engaged in in his opening remarks. Was Mr. Hartman's argument that deporting the father would render the mother and child homeless made to the immigration judge? I don't believe that it was. In fact, if we talk about what constitutes a legal error, and this Court in the Mendez case said, a legal error is where the tribunal seriously mischaracterizes or totally overlooks evidence. And again, opposing counsel didn't make that claim, that evidence was overlooked or mischaracterized by the immigration judge. In fact, if you look at the record- What was the exceptional or unusual hardship that was argued below? What was the hardship? What was the claim to be? The claim, I mean, counsel would be in a better position. The claim was essentially that, I guess with the remaining parent who has diabetes, the U.S. citizen child would suffer economically. But the record is not clear that she would stay, that the U.S. citizen child would stay in the United States or return to Guatemala. In the application itself, he claims that the child would stay in the United States, but in the record at 93, I believe, when he's asked, will you take your daughter with you to Guatemala, he says that he will take his daughter with him to Guatemala. And so it was his burden to meet below, and we have no evidence of country conditions in Guatemala. We have no evidence of what the educational opportunities may or may not be in Guatemala. We have simply his acknowledgment that in Guatemala his father still lives there, and he has two siblings there. And so the evidence in this case, frankly, was slim. It was his burden to meet. And there's no suggestion in the brief or in opening comments that the agency mischaracterized that evidence or overlooked the evidence. So we would say that we don't actually enter into a weighing of the equities here. We just ask whether there is a legal error. And respectfully, I would say that no legal error has been shown, and we reiterate our position in our brief that there is no jurisdiction. In your brief, you state in a footnote that the petitioner's wife is not legally in the United States. Is that your position? I believe the transcript testimony bears that out. And so what's happening on that front? The petitioner's wife, I have no information of whether she's in separate proceedings or whether ‑‑I'm sorry, I have no information about her current legal ‑‑ You on behalf of the executive and we on the court, it would help to have a fuller picture here, but I understand it's not in the record before us. Other than the defendant's testimony that his wife was unable to work because of her diabetes, was there any medical evidence put before the court? I didn't see that. Your Honor, there was no medical evidence. And the wife herself did not testify? She did not testify. She entered a personal statement. And that personal statement, brief as it was, also didn't mention that she has diabetes, that she's otherwise constrained from working or caring for the child. So there was a witness who was a friend of the petitioner who said that she vouched for his character and she said that his wife, the mother of the U.S. citizen child in question, has diabetes. That is the extent of the medical evidence. Okay, thank you. Any other questions? No, thank you. Mr. Hartman, you reserved some time for rebuttal. Yes, Your Honor, and to address specifically the issue of whether or not the mother had diabetes, as I think I said in my ‑‑ Your client testified to that. I was just asking what other evidence there was. Correct, yeah. I think the government disputes it. Okay, yeah. I just wanted to clarify that point, that ‑‑ and I think the court, you know, who is the fact finder that we give ‑‑ that we're supposed to give deference to, they did not dispute that she did in fact have diabetes. In terms of the issue of like the matter of law, the brief does state that the issue of law here is whether or not the extreme and unusual hardship standard comports with the Andazola case, the Monreal case, and the Racines case. And so our position is that it is most closely with the Racines case. And nowhere have I ‑‑ and the Racines case is a 2002 Board of Immigration Appeals decision on an appeal from a denial of cancellation removal with a situation with exceptional, extreme and unusual hardship. And the government doesn't make an effort to distinguish the case that we have here and the Racines case. And so our position is that in the Racines case, I think that the board essentially found that there's no way for these four U.S. citizen children to survive. And I will concede that four is different than one. But essentially there, four U.S. citizen children had no viable way to survive short of their single mother staying in the United States. And our position is that essentially in terms of like providing care, the single, the father is sort of functioning as a single father in terms of support. And the other issue that was brought up by the government was this issue of whether or not the respondent will bring his Guatemalan child back to Guatemala with him should he be removed. There's no evidence to suggest that she has any legal right to be in Guatemala. She has no Guatemalan visa. She is not a citizen of Guatemala. So, you know, regardless of what the client wants, the reality is that he has no way of getting her to Guatemala because she has no legal status in Guatemala. And the government doesn't address that. The record, was it, whether she did or didn't? I mean, both her mother and father are Guatemalan nationals, right? That's correct. Right. And you didn't put on any evidence that even though she is the child of Guatemalan nationals, that because she's born in the United States, Guatemala would not give her citizenship? I don't know either way, but it's not been, if the inverse is being suggested, that this child can move to the United States, no counter evidence has been presented. Out of the United States. Right. Okay. Thank you. Thank you. We're going to take the case under advisement and try to get you a decision as soon as we can.